IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

FILED SCRANTON
JAN 10 2013
PER_____ DEPUTY CLERK

CLARENCE TONEY, :
:
    Plaintiff :    CIVIL NO. 3:CV-13-09
:
v. :
:    (Judge Conaboy)
:
JEROME WALSH, ET AL., :
:
    Defendants :

## MEMORANDUM
### Background

Clarence Toney, an inmate presently confined at the State Correctional Institution, Dallas, Pennsylvania (SCI-Dallas), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has also submitted a request for leave to proceed in forma pauperis. See Doc. 2.

Named as Defendants are the following SCI-Dallas officials: Superintendent Jerome Walsh, Hearing Examiner C. J. McKeown, as well as Correctional Officers Mattello[1] and Bobowitz. See Doc. 1, ¶ III. Plaintiff states that on October 12, 2012 he had a visit with his fiancee. During this visit, CO Bobowitz purportedly claimed that the fiancee touched Toney in a sexually inappropriate manner. When informed of this accusation, Plaintiff's fiancee asked

---

[1] The Complaint provides two different spelling of this Defendant's name.

1

Defendant Mattello if she could speak with a captain or major to report verbal harassment by Defendant Bobowitz.[2] It is alleged that Mattello denied Plaintiff and his visitor the right to register a complaint, advising them to "leave it alone, and if not you'll never see each other again." Id. at ¶ IV(3). When Plaintiff threatened to initiate a federal civil rights action, Bobowitz allegedly replied that the courts always side with the officer.

Four hours after the visit, Toney was issued an institutional misconduct charging him with sexual acts, lying, and violating visitation rules. By letter dated October 15, 2012, Superintendent Walsh allegedly informed Toney's fiancee that her visitation privileges would be suspended indefinitely. Plaintiff asserts that Walsh's action was improper since the prisoner had not yet been afforded a misconduct hearing on the underlying charges. The Complaint further contends that the Superintendent failed to properly supervise the other Defendants. See id. at p. 4.

Following an October 17, 2012 disciplinary hearing (which included a review of related video footage) before Defendant McKeown, Toney states that he was found not guilty of lying and sexual acts but guilty of violating institutional visitation

---

[2] Mattello is described as having a reputation of being biased against Muslims and people of color. The Complaint adds that Correctional Officer Bobowitz has been the subject of many inmate complaints. Id. at p. 4.

2

rules.[3] The prisoner was sanctioned by Hearing Examiner McKeown to an indefinite loss of visitation rights, which the Complaint claims was an excessive sanction.

The Complaint also includes allegations that the sanction was imposed against Plaintiff in retaliation for his attempt to pursue administrative relief and that he and his fiancee were the victims of discrimination. Plaintiff seeks injunctive relief (reinstatement of his visitation privileges) as well as punitive damages.

**Discussion**

28 U.S.C. § 1915 imposes obligations on prisoners who file civil actions in federal court and wish to proceed in forma pauperis under 28 U.S.C. § 1915, e.g., that the full filing fee ultimately must be paid (at least in a non-habeas suit) § 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.

When considering a complaint accompanied by a motion to proceed in forma pauperis, a district court may rule that process

---

[3] Plaintiff states that Hearing examiner McKeown "sides with his officers." Id. at p. 4. This contention is partially undermined by the fact that Toney was admittedly found not guilty on 2 of the 3 charges levied against him.

3

should not be issued if the complaint is malicious, presents an indisputably meritless legal theory, or is predicated on clearly baseless factual contentions. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989); Wilson v. Rackmill, 878 F.2d 772, 774 (3d Cir. 1989). Indisputably meritless legal theories are those "in which either it is readily apparent that the plaintiff's complaint lacks an arguable basis in law or that the defendants are clearly entitled to immunity from suit ... ." Roman v. Jeffes, 904 F.2d 192, 194 (3d Cir. 1990) (quoting Sultenfuss v. Snow, 894 F.2d 1277, 1278 (11th Cir. 1990)).

The United States Court of Appeals for the Third Circuit has added that "the plain meaning of 'frivolous' authorizes the dismissal of in forma pauperis claims that . . . are of little or no weight, value, or importance, not worthy of serious consideration, or trivial." Deutsch v. United States, 67 F.3d 1080, 1083 (3d Cir. 1995). It also has been determined that "the frivolousness determination is a discretionary one," and trial courts "are in the best position" to determine when an indigent litigant's complaint is appropriate for summary dismissal. Denton v. Hernandez, 504 U.S. 25, 33 (1992).

**Personal Involvement**

With respect to the failure to properly supervise contention raised against Superintendent Walsh, civil rights claims cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each

4

named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Prisoners also have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance regulations providing for administrative remedy procedure do not

5

create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by a prisoner to establish liability against a correctional official based upon their handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable).

Pursuant to the standards announced in Rode and Hampton, Plaintiff's action to the extent that it seeks to establish liability against Superintendent Walsh solely based upon his supervisory capacity within SCI-Dallas cannot proceed. Such a respondeat superior type assertion is simply insufficient for establishing civil rights liability. Likewise, any attempt by Toney to set forth claims against Defendant Walsh solely based upon any responses or lack of action to his administrative grievances is equally inadequate under Flick and Alexander.

**Verbal Threats**

Plaintiff alleges that he was subjected to verbal harassment and threats See Doc. 1, p. 4. The use of words generally cannot constitute an assault actionable under § 1983. Johnson v. Glick,

6

481 F.2d 1028, 1033 n.7 (2d Cir.); Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995); Murray v. Woodburn, 809 F. Supp. 383, 384 (E.D. Pa. 1993) ("Mean harassment . . . is insufficient to state a constitutional deprivation."); Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993) ("[V]erbal harassment does not give rise to a constitutional violation enforceable under § 1983.").

Mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. Balliet v. Whitmire, 626 F. Supp. 219, 228-29 (M.D. Pa.) ("[v]erbal abuse is not a civil rights violation . . ."), aff'd, 800 F.2d 1130 (3d Cir. 1986) (Mem.). A constitutional claim based only on verbal threats will fail regardless of whether it is asserted under the Eighth Amendment's cruel and unusual punishment clause, see Prisoners' Legal Ass'n, 822 F. Supp. at 189, or under the Fifth Amendment's substantive due process clause.

Verbal harassment or threats, with some reinforcing act accompanying them, however, may state a constitutional claim. For example, a viable claim has been found if some action taken by the defendant escalated the threat beyond mere words. See Northington v. Jackson, 973 F.2d 1518 (10th Cir. 1992) (guard put a revolver to the inmate's head and threatened to shoot); Douglas v. Marino, 684 F. Supp. 395 (D.N.J. 1988) (involving a prison employee who threatened an inmate with a knife). Generally, though, alleged instances of verbal harassment which are not accompanied by any physical contact are constitutionally insufficient. See Hart v.

7

Whalen, 2008 WL 4107651 *10 (M.D. Pa. July 29, 2008); Wright v. O'Hara, 2004 WL 1793018 *7 (E.D. Pa. 2004)(correctional officer's words and gestures, including lunging at prisoner with a clenched fist were constitutionally insufficient because there was no physical contact).

There is no indication that any of the verbal harassment allegedly voiced against Inmate Toney was accompanied by a reinforcing act involving a deadly weapon as contemplated under Northington and Douglas. More importantly, it is not alleged that any of the alleged verbal abuse was accompanied by any physically intrusive behavior by any of the named Defendants. Given the circumstances described by Plaintiff, any verbal remarks which may be attributed to any of the named Defendants were not of the magnitude to shock the conscience as contemplated by this Court in S.M. v. Lakeland School District, 148 F. Supp.2d 542, 547-48 (M.D. Pa. 2001) and thus, did not rise to the level of a constitutional violation.

**Visitation**

Plaintiff alleges that his fiancee's visitation rights were indefinitely restricted by Superintendent Walsh and his visitation rights were suspended for an indefinite period by Hearing Examiner McKeown. Toney's complaint contends that both actions were improper.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." In order to implicate the Eighth

8

Amendment, a condition of confinement must be so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The only constitutionally protected interest which generally may be created by a prison regulation is one to be free from a condition which results in "atypical and significant hardship" in relation to the unusual incidents of imprisonment. See Sandin v. Conner, 515 U.S. 472 (1995). An inability to receive visitors is not atypical and unusually harsh compared to the ordinary circumstances contemplated by a prison sentence. Parke v. Lancaster County Prison, Civil No. 95-6425, slip op. at 5 (E.D. Pa. Oct. 24, 1995) (DuBois, J.).

Neither convicted prisoners nor their family members have an inherent constitutional right to visitation. See Flanagan v. Shively, 783 F. Supp. 922, 934 (M.D. Pa.), aff'd, 980 F.2d 722 (3d Cir. 1992), cert. denied, 114 S. Ct. 95 (1993); Doe v. Sparks, 733 F. Supp. 227, 230 & n.3 (W.D. Pa. 1990); Buehl v. Lehman, 802 F. Supp. 1266, 1270 (E.D. Pa. 1992)(visitation is a privilege subject to the discretion of prison authorities).

Removal from society is a fundamental incident of imprisonment and where visitation is permitted, it is often narrowly circumscribed. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 461 (1989) (denying prison visitation with mother characterized as well within ordinarily contemplated terms of

imprisonment). Moreover the regulations of the Pennsylvannia department of Corrections (DOC) provide that "[v]isits may be suspended , terminated, or restricted, to maintain the security or orderly running of the visiting room and/or the facility or as made necessary by the behavior of the inmate or visitor(s)." Pa DOC DC-ADM 812 § N(1)(effective Sept. 10, 2009). The DOC regulations further provide that visitation privileges may be suspended by the Superintendent or a Hearing Examiner.

The United States Supreme Court has recognized that the Constitution does not require that inmates be allowed visits "when reasonable, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the institution." Block v. Rutherford, 468 U.S. 4576, 589 (1984). More recently, the Supreme Court elaborated that "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior." Overton v. Bazzetta, 539 U.S. 126, 134 (2003). The Court of Appeals for the Third Circuit has similarly concluded that a legitimate prohibition on visititation is acceptable even if it implicates a fundamental right, such as family relationships. Inmates of Allegheny County v. Pierce, 612 F.2d 754, 759 (3d Cir. 1979).

Based upon an application of the above standards, the visitation ban of unknown duration placed upon Toney and his fiancee as alleged in the present Complaint is not a condition of confinement so reprehensible as to be deemed inhumane under

10

contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life, as required to implicate the Eighth Amendment. See Bazzetta v. McGinnis, 124 F.3d 774, 779 (6th Cir. 1997)(ban on contact visits "cannot be said to constitute cruel and unusual punishment."). Moreover, in light of a determination by CO Bobowitz that Plaintiff and his fiancee had violated institutional rules or policy with respect to their conduct during a visit, the subsequent decisions by Superintendent Walsh and Hearing examiner McKeown to suspend the visitation privileges between those individuals was a reasonable exercise of discretion and did not infringe upon any constitutional protections.

**Misconduct Hearing**

Plaintiff states that he was given a misconduct charging him with sexual acts, lying, and violating visitation rules. Toney alleges that Hearing Examiner McKeown violated his due process rights because the Defendant always sides with correctional officers and imposed an excessive sanction.[4]

---

[4] Plaintiff's acknowledgment that he was acquitted on two of the three disciplinary charges following a hearing before Defendant McKeown arguably undermines his claim of bias.

Plaintiff's claim of an excessive sanction (suspension of his visitation rights for an indefinite period) is based upon his correct observation that the DOC penalty for a first offense drug related misconduct during visitation is only a 180-day suspension of visitation privileges. See DOC DC-ADM 812 § N(3). However, the fact that drug related misconduct during visitation carries only a 180-day visitation suspension does not by itself warrant a determination that McKeown imposed an excessive sanction because Plaintiff does not allege that he committed a drug related misconduct.

11

The United States Supreme Court in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-73 (1974), held that a prisoner deprived of good time credits as a sanction for misconduct is entitled to certain due process protections in a prison disciplinary proceeding.[5] <u>Wolff</u> noted that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." <u>Id</u>. at 556. Nonetheless, the Supreme Court held that a prisoner facing a loss of good time credits is entitled to some procedural protection. <u>Id</u>. at 563-71.

A subsequent Supreme Court decision, <u>Sandin v. Conner</u>, 515 U.S. 472, 480-84 (1995), reiterated that the due process safeguards set forth in <u>Wolff</u> must be provided when the challenged disciplinary proceeding results in a loss of good time credits. <u>See</u> <u>also</u> <u>Young v. Kann</u>, 926 F.2d 1396, 1399 (3d Cir. 1991) (a prisoner has a constitutionally protected liberty interest in good time credit); <u>Griffin v. Spratt</u>, 969 F.2d 16, 19 (3d Cir. 1992). Since there is no claim by Toney that he was sanctioned to a loss

---

[5] <u>Wolff</u> set forth five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the charges; (3) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; (5) a written decision by the fact finders as to the evidence relied upon and the rationale behind their disciplinary action. <u>Id</u>. An additional procedural requirement was set forth in <u>Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill</u>, 472 U.S. 445, 453-56 (1985). In that case, the Supreme Court held that there must be some evidence which supports the conclusion of the disciplinary tribunal.

of good time credits or any other sanction which adversely affected the duration of his confinement, a viable due process claim has not been set forth against Defendant McKeown.[6]

**Retaliation**

The Complaint also includes a vague allegation that the loss of visitation rights was retaliatory. To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)). The mere fact that an adverse action occurs after a complaint or grievance is filed is relevant,

---

[6] If Plaintiff had been sanctioned to a loss of good time credit, his appropriate federal court remedy would be to seek federal habeas corpus relief. See Leamer v. Fauver, 288 F.3d 532, 540 (3d Cir. 2002). Furthermore, loss of visitation is neither an atypical and significant hardship nor implicates a protected liberty interest as contemplated under Sandin.

13

but not dispositive, for the purpose of establishing a causal link between the two events.[7] See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005).

Once Plaintiff has made a prima facie case, the burden shifts to the Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

The Complaint clearly alleges that Plaintiff and his fiancee attempted to seek administrative relief after they were accused of violating the prison's visitation rules. There is no allegation that the allegations of improper conduct during visitation were taken in retaliation for any exercise of a constitutionally protected right. Likewise, since Plaintiff was accused of misconduct prior to his alleged attempt to obtain administrative relief, it cannot be concluded that the disciplinary charge was retaliation for seeking administrative relief. Based upon an

---

[7] Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

14

application of <u>Rauser</u> to those allegations, this Court is satisfied that Plaintiff has not adequately set forth a claim of retaliation.

**Conclusion**

Since Toney's Complaint is "based on an indisputably meritless legal theory," his pending claims will be dismissed, without prejudice, as legally frivolous. <u>Wilson</u>, 878 F.2d at 774. An appropriate Order will enter.

*[signature]*
RICHARD P. CONABOY
United States District Judge

DATED: JANUARY 10th, 2013